# United States District Court
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **SANDY NELSON AND JACK MEDFORD AS CO-TRUSTEES OF THE PATRICIA CLARKE 2010 LIVING TRUST,**<br><br>**PLAINTIFFS,**<br><br>VS.<br><br>**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,**<br><br>**DEFENDANT.** | Civil Action No. 4:21-cv-805<br><br>JURY TRIAL |

## CLASS ACTION COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT

1.      NOW COME Plaintiffs, Sandy Nelson and Jack Medford in their capacity as Co-Trustees of The Patricia Clarke 2010 Living Trust (hereinafter sometimes referred to as the "Trust"), acting by and through their attorneys, file this action on behalf of the Trust and other variable annuity contract holders who purchased their contracts from Allianz Life Insurance Company (hereafter "ALLIANZ" or "Defendant").  Plaintiffs assert that ALLIANZ  improperly charged all variable annuity contract holders with respect to what are called "surrender charges" in connection with administration of variable annuity contracts issued by ALLIANZ. In so doing, ALLIANZ has breached the contracts it has made with each contract holder, acting uniformly in violation of the terms and conditions of its variable annuity contracts.

## NATURE OF THE ACTION

2.      Plaintiffs are the Co-Trustees of The Patricia Clarke 2010 Living Trust and, acting in their capacities as Co-Trustees, they caused the Trust to make an excess partial withdrawal from the variable annuity owned by the Trust issued by ALLIANZ. The Trust, as a

result of the excess partial withdrawal, suffered a surrender charge as enumerated below. Plaintiffs allege that the calculation by ALLIANZ of such surrender charge is in excess of the proper amount that should have been charged under the terms and conditions of the contract. As a result, the Trust has been damaged, not only by the amount of the improper charge, but by the reduction in contractual benefits that is a collateral consequence of the improper charge.

3. Defendant Allianz Life Insurance Company of North America is a stock life insurance company and is the company that issued the variable annuity contract to Plaintiffs.[1] Allianz Life Insurance Company of North America is licensed to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332. This Court has personal jurisdiction over Defendant because Defendant is doing business in the State of Texas and is licensed in Texas. Furthermore, the aggregate amount in controversy for this class action exceeds $5,000,000, and, on information and belief, less than one-third of all Class Members reside in the State of Texas. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332 and 1711.

5. This Court has supplemental jurisdiction over the subject matter of any Texas common law and/or statutory claims pursuant to 28 U.S.C. §1367. Such claims form part of the same case or controversy under Article III of the United States Constitution.

---

[1] Variable annuities are a hybrid insurance and investment product. The investment component consists of units of interest in a separate account that are registered as securities under the Securities Act of 1933. The separate account is registered as an investment company for purposes of the Investment Company Act of 1940 (ICA). The insurance components of variable annuities consist of an annuity insurance contract issued by a state-regulated insurance company, and interests in one or more fixed accounts that invest in the general account of a state-regulated insurance company.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because ALLIANZ has agents and transacts business here. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

### A. PLAINTIFF

7. Plaintiffs Sandy Nelson and Jack Medford are the Co-Trustees of The Patricia Clarke 2010 Living Trust.  Sandy Nelson is a citizen of the state of Florida and resides in Panama City.  Jack Medford is a citizen of the state of Texas and resides in Frisco.  The former Trustee of the Patricia Clarke 2010 Living Trust, Robin Kay Clarke, purchased a variable annuity from ALLIANZ called Allianz Vision Series Variable Annuity on February 20, 2015. Sandy Nelson and Jack Medford assumed the duties as Co-Trustees of the Trust on November 11, 2020 and in their capacity as Co-Trustees of the Trust they made a withdrawal of $64,352.00 from the ALLIANZ variable annuity on December 3, 2020.  Such withdrawal caused the Trust to incur surrender charges in the amount of $4,107.57.  Plaintiffs, as the Successor Co-Trustees of the Trust, have standing to bring this action as the Trust was caused to suffer a concrete injury in that the calculated penalty charged by ALLIANZ for the withdrawal was in an amount that violated the terms and provisions of the variable annuity.

### B. DEFENDANT

8. Defendant Allianz Life Insurance Company of North America is organized as an insurance company under the laws of the state of Minnesota and maintains its principal place of business and headquarters at 5701 Golden Hills Drive, Minneapolis, Minnesota 55416-1297. Defendant ALLIANZ is licensed to transact insurance in 49 states and the District of Columbia (in the State of New York it sells its annuities through its wholly owned subsidiary, Allianz Life Insurance Company of New York).  ALLIANZ has assets of nearly $151 billion and, according to A.M. Best Ratings, ALLIANZ is touted as one of the largest individual annuity writers in the

U.S. life insurance industry. ALLIANZ specializes in selling retirement income and savings products geared primarily toward retirees, with the majority of its products being variable annuities. The Texas Department of Insurance has approved ALLIANZ variable annuity products for sale in the state of Texas. ALLIANZ sells variable annuity products around the country, including to residents in the Sherman Division of the Eastern District of Texas.

## FACTUAL BACKGROUND

### Allianz's Conduct

9. Plaintiffs bring this nationwide class-action, exclusive of Texas and New York (where a subsidiary of ALLIANZ sells its annuities), on behalf of themselves and other similarly situated variable annuity purchasers to halt and remedy the harm caused by Defendant Allianz Life Insurance Company of America's systematic breach of its contract provisions in connection with the calculation of surrender charges.

10. Plaintiffs also bring this Texas statewide class-action on behalf of themselves and other similarly situated variable annuity purchasers who are resident citizens of the state of Texas to halt and remedy the same harm described in the nationwide class-action, the systematic breach of ALLIANZ's contract provisions in connection with the calculation of surrender charges.

11. Defendant markets and sells its variable annuity products on a national basis primarily through its network of individual sales agents, marketing organizations, third party marketing organizations ("TPMOs"), brokerage firms and financial institutions. Defendant uses four principal distribution channels to effectuate the sale of its variable annuities, which include independent broker/dealers, regional broker/dealers, financial institutions and individual sales agents (collectively referred to herein as "Affiliated Agents").

12. A large portion of Defendant's annuity business is effectuated through ALLIANZ's "deal direct" system, wherein individual agents contract with and are appointed by ALLIANZ to promote and sell Defendant's products, including variable annuities.

13. Defendant also utilizes marketing organizations and/or brokerage firms that hire and manage groups of independent sales agents on behalf of ALLIANZ, who are trained to sell Defendant's variable annuity products.

14. Defendant prepares, disseminates and approves standardized information, account service forms, brochures, illustrations, marketing and sales materials to Affiliated Agents for effectuating the sale of variable annuities to customers, many of whom are senior citizens. Defendant markets its variable annuity products primarily to older Americans and senior citizens in the Eastern District of Texas and nationwide.

C. **The Structure of ALLIANZ's Variable Annuities**

15. Annuities are complex products that contain a number of different parts that have differing effects and results depending on performance and decisions made by the purchaser. The deferred annuity can be broken down into two types, either a fixed or variable annuity. The basic difference is that fixed annuity premiums grow at a guaranteed fixed interest rate, whereas variable annuity premiums are invested in equity portfolios that fluctuate in value, thus being variable.

16. The fixed annuity purchaser receives from the insurer an interest rate on the amount of premiums paid into the deferred fixed annuity, very similar to a debt instrument.

17. The variable annuity purchaser experiences fluctuations in value since premiums are invested in equity portfolios. These equity portfolios are called "sub-accounts" and consist of shares which are purchased with the annuity premium. These shares are called "units" and represent the investment in the sub-account. Every sub-account has a share price, or "unit price", which is used to determine the value of the sub-account, which fluctuates daily

depending on the performance of the sub-account. The annuity purchaser has the choice to invest in one or more sub-accounts of an overall separate account sponsored by the insurer, and contains many different investment vehicles similar to mutual funds which are managed by mainstream, third-party professional investment managers.

18. A variable annuity is granted tax deferred status from the United States Internal Revenue Code regardless if the annuity purchase is made with IRA (qualified) funds or after-tax (nonqualified) funds. Nonqualified annuity investment gain is tax deferred until withdrawn, in which case the withdrawal of gain over the original cost basis is taxed at the contract owner's ordinary income tax rates in effect at the time of withdrawal. A qualified annuity is treated the same as other similar IRA investments in terms of tax deferral and taxation of withdrawals.

19. The variable annuities sold by ALLIANZ contain various components with different characteristics. The separate accounts, which contain sub-accounts that each hold a portfolio of stocks or bonds or other investments, are federally regulated, and (if no exemption applies) the interests in the separate accounts available under the variable annuity contracts are registered as securities and sold pursuant to federal security laws.

20. Variable annuities sold by Defendant can be purchased with optional benefits called "living benefit riders" and "death benefit riders" for an extra cost. A living benefit is designed to provide an insurance benefit while the contract owner is living and generally consists of a "benefit base" from which the living benefit is determined. A death benefit is designed to provide an insurance benefit when the contract owner dies and generally consists of a "benefit base" from which the death benefit is determined.

21. A variable annuity product is selected, optional benefits chosen, and then applied for via a paper application. Once the premium (purchase payment) is accepted by ALLIANZ, a contract is delivered to the annuity purchaser. The contract contains the terms and provisions of how the annuity will work, describes the fees, and the various features of the annuity. The

contract also contains the terms and provisions of how the optional living benefit rider and death benefit rider will work, describes the fees for those optional benefits, and the various features of those benefits. The contract is either accepted or rejected by the annuity purchaser. The contract can be rejected by the annuity purchaser within the "free look period", which is typically 10 to 30 days depending on the state in which the annuity was purchased, wherein the annuity purchaser returns the contract to the issuer and receives a refund.

### D.     Surrender Charges

22.     Costs and fees are important to the performance of a variable annuity contract. Surrender charges are a very important component of variable annuity policies and a source of significant revenue to issuers like ALLIANZ. The SEC has published guidelines for consumers that highlight the importance of these charges and the impact that they can have on the value of the purchaser's contract:

> You will pay several charges when you invest in a variable annuity. Be sure you understand all the charges before you invest. **These charges will reduce the value of your account and the return on your investment.** Often, they will include the following:
>
> **Surrender charges** – If you withdraw money from a variable annuity within a certain period after a purchase payment (typically within six to eight years, but sometimes as long as ten years), the insurance company usually will assess a "surrender" charge, which is a type of sales charge. This charge is used to pay your financial professional a commission for selling the variable annuity to you. Generally, the surrender charge is a percentage of the amount withdrawn, and declines gradually over a period of several years, known as the "**surrender period**." For example, a 7% charge might apply in the first year after a purchase payment, 6% in the second year, 5% in the third year, and so on until the eighth year, when the surrender charge no longer applies. Often, contracts will allow you to withdraw part of your account value each year – 10% or 15% of your account value, for example – without paying a surrender charge.
>
> **Example:** You purchase a variable annuity contract with a $10,000 purchase payment. The contract has a schedule of surrender charges, beginning with a 7% charge in the first year, and declining by 1% each year. In addition, you are allowed to withdraw 10% of your contract value each year free of surrender charges. In the first year, you decide to withdraw $5,000, or one-half of your contract value of $10,000 (assuming that your contract value has not increased or decreased because of investment performance). In this case, you could withdraw $1,000 (10% of contract value) free of surrender charges, but you would pay a surrender charge of 7%, or $280, on the other $4,000 withdrawn.
>
> See https://www.sec.gov/investor/pubs/varannty.htm

23.     ALLIANZ earns very substantial and growing amounts from the surrender charges paid by its contract holders.

24. Given the astounding level of the variable annuity sales to elderly individuals, one would think that charges which are assessed by ALLIANZ against the savings of retirees and other variable annuity contract holders ALLIANZ would be scrupulously fair in assessing such charges. In fact, however, that is not the case, and instead, ALLIANZ is assessing excess charges as a matter of uniform application of its methodology and breaching the terms of its contract as to all contract holders who incur such charges.

## DEFENDANT'S BREACH OF CONTRACT

### E. The Contract Language Specifying Calculation of the Withdrawal Charge

25. By virtue of the methodology employed, ALLIANZ is not only assessing a surrender charge on the withdrawal amount, but is actually *assessing a surrender charge on the surrender charge*. By doing so, ALLIANZ violates the plain language of the contract that it has written, and acts contrary to the explanation and example put forth by the SEC for the benefit of consumers. Such improper conduct should be prohibited and all past and current contract holders should be compensated for the excess surrender charges that have been imposed.

26. The calculation of surrender charges is governed by the contracts issued by ALLIANZ, which contracts are based upon only a few specific contract forms. On information and belief, ALLIANZ interprets all of these contract forms in the same way and uses uniform language with respect to its calculation of surrender charges. ALLIANZ contracts contain provisions for calculating and deducting Withdrawal Charges. There are two types of withdrawals that can be requested from the Contract:

> "During the Accumulation Phase, you can request a Full or Partial Withdrawal from this contract by providing an Authorized Request." L40535-01-TX pg. 9.

> Either of those types of Withdrawals will trigger a Withdrawal Charge calculation:

> "Upon a Full or Partial Withdrawal of this contract we assess a Withdrawal Charge." L40535-01-TX pg. 9.

27. The contract specifies that Withdrawal Charges are calculated when there are withdrawals of Purchase Payments:

> "A Withdrawal Charge applies if any part[2] of a Withdrawal comes from a Purchase Payment that is still within the Withdrawal Charge period." L40535-01-TX pg. 9.

28. ALLIANZ further tracks a separate component value they call the Withdrawal Charge Basis. This internally tracked figure is a contractual flag indicating whether a future Withdrawal would qualify for zero Withdrawal Charges regardless of whether there are still Purchase Payments still within the Withdrawal Charge period:

> "If the Withdrawal Charge Basis is zero, we do not assess a Withdrawal Charge." L40535-01-TX pg. 9.

29. The Withdrawal Charge Basis is accounted for separately and is tracked independently of Purchase Payments. The Withdrawal Charge Basis is increased for purchase payments and *decreased* for both withdrawals of premium payments **and** withdrawal charges:

> "[the Withdrawal Charge Basis] is equal to total Purchase Payments, less any Purchase Payments withdrawn (excluding any Penalty-free Withdrawals), and less any applicable Withdrawal Charges outlined below."

30. The contract emphasizes that the Withdrawal Charge Basis is reduced by Withdrawal Charges:

> "We assess the Withdrawal Charge against the Withdrawal Charge Basis…" L40535-01-TX pg. 9.

31. ALLIANZ breaches their contract by considering this reduction against the Withdrawal Charge Basis as an *additional trigger* for extra withdrawal charge calculations. The contract does not permit Withdrawal Charges to be triggered upon a reduction of the Withdrawal Charge Basis. The contract limits Withdrawal Charges to apply to the "part" of the Withdrawal

---

[2] "Any part" refers ALLIANZ's method of separating the Withdrawal into four-parts. This four-part ordering process is fully described in the contract and is also referenced later herein.

which represents withdrawal of Purchase Payments.[3] Only withdrawals of Purchase Payments can trigger a Withdrawal Charge calculation ("A Withdrawal Charge applies if any part of a Withdrawal comes from a Purchase Payment)". Because ALLIANZ makes the additional calculation, ALLIANZ causes a calculation of withdrawal charges upon withdrawal charges in breach of their own contract. Only withdrawals of Purchase Payments still within the Withdrawal Period are subject to a Withdrawal Charge. The contract states this again in a Four-Part Ordering Process to further clarify that only a Withdrawal of a Purchase Payment would generate a Withdrawal Charge, specifically part 3:

> "For purpose of calculating any Withdrawal Charge we withdraw Purchase Payments on a first-in-first-out (FIFO) basis. We calculate the charge [Withdrawal Charge] at the time of each Withdrawal [Full or Partial Withdrawal]. We take each Withdrawal from your contract in the following order.
>
> 1.      Purchase Payments that are beyond the Withdrawal Charge period shown in the Withdrawal Charge Percentages Table. This Withdrawal is not subject to a Withdrawal Charge and it reduces the Withdrawal Charge Basis.
>
> 2.      Purchase Payments that are available under the Free Withdrawal Privilege. This Withdrawal is not subject to a Withdrawal Charge and it does not reduce the Withdrawal Charge Basis.
>
> 3.      Purchase Payments that are within the Withdrawal Charge period shown in the Withdrawal Charge Percentages Table on a FIFO basis. This Withdrawal is subject to a Withdrawal Charge, which is determined by *multiplying* each Purchase Payment by its applicable Withdrawal Charge percentage and then totaling the charges. This Withdrawal reduces the Withdrawal Charge Basis. (Emphasis supplied).
>
> 4.      Any contract earnings. We treat the Bonus and any earnings on the Bonus as contract earnings. This Withdrawal is not subject to a Withdrawal Charge and it does not reduce the Withdrawal Charge Basis." L40535-01-TX pg. 9.

32.     ALLIANZ breaches their contract by treating a Withdrawal Charge as both a withdrawal of a Purchase Payment and a reduction of the Withdrawal Charge Basis when they are only permitted the latter.

---

[3] Part 3 described later.

33. ALLIANZ further amplifies their breach of contract by deducting the Withdrawal Charge from the Withdrawal amount. The contract states:

> "At the end of each Business Day, we adjust the number of Accumulation Units in each subaccount as follows. Additional Purchase Payments, bonus amounts, and Transfers into a subaccount will increase the number of Accumulation Units. Withdrawals (including any applicable Withdrawal Charges)… will decrease the number of Accumulation Units." L40535-01-TX pg. 7.

34. ALLIANZ is required to cause Withdrawal Charges to decrease Accumulation Units directly and separately. ALLIANZ instead combines the entire transaction into a "grossed-up" amount and decreases Accumulation Units in a combined transaction. ALLIANZ "grosses-up" the requested Withdrawal by applying a sum-of-infinite series formula[4] which enables the withdrawal-charge-upon-withdrawal-charge to occur seamlessly and without notice. ALLIANZ causes the **entire amount** of the "grossed-up" withdrawal to be a subject to the stated Withdrawal Charge percentage and deceptively makes the entire method appear contractual. But what results is a lowered "netted-down" amount to the policyholder than what is contractual. This is because ALLIANZ is incorrectly causing the reduction in Withdrawal Charge Basis itself to become subject to a Withdrawal Charge instead of limiting Withdrawal Charge calculations to withdrawals of Purchase Payments.[5]

35. The contract requires a specific reduction in Withdrawal Charge Basis and a specific withdrawal of Purchase Payment resulting in a specific Withdrawal Charge calculation. It cannot be "grossed-up" and "netted-down". ALLIANZ ignores their own Four-Part Ordering Process and requirement to deduct Accumulation Units directly. Instead, ALLIANZ applies a

---

[4] Using the plaintiff's 6% withdrawal charge percentage, ALLIANZ will divide the withdrawal charge percentage by one minus the Withdrawal Charge Percentage: 6%/ (1 - 6%) = 6.3829787%. This is not the stated 6% in the Withdrawal Charge Schedule. This is the sum-of-an-infinite series formula (SOIS). This modified Withdrawal Percentage is applied to the requested Withdrawal amount to arrive at the Withdrawal Charge into a single figure called the Withdrawal (the "grossed-up" withdrawal) and causes Accumulation Units to be deducted for this single figure instead of separate deductions as the contract requires.

[5] See Four-Part Ordering Process earlier, specifically part 3.

**ALLIANZ COMPLAINT**                                                                                                  **PAGE 11**

"gross and net" methodology masquerading as a contractual short-cut when in fact it is a way to cause Withdrawal Charges to be subject to their own Withdrawal Charges in breach of their contract rules.

F. **ALLIANZ's Improper Extra-Contractual Application of Grossing and Netting**

36. The above-referenced contract language is a complete description of the contractual Withdrawal Charge calculation provisions that should be applied by ALLIANZ. What ALLIANZ does in practice, however, is to perform one additional step in front of the contractual sequence or at the back of the contractual sequence depending on the method elected by the forms processor at ALLIANZ. ALLIANZ will modify the requested withdrawal amount in one of two ways depending on which programmed method the forms processor chooses in ALLIANZ's policy administration system. The two methods are called "grossing up" the requested withdrawal and "netting down" the requested withdrawal.

37. **"Grossing up:"** ALLIANZ will "gross up" the requested withdrawal by formulae and simply charge the respective Withdrawal Charge on the larger "grossed up" withdrawal amount instead of the actual amount requested. By modifying the requested withdrawal amount internally, the contract owner receives the expected amount in cash as per the service form. ALLIANZ breaches its contract language by then dividing the excess withdrawal amount by the formulae (amount of withdrawal subject to penalty divided by 1 - the applicable penalty percentage) resulting in the contract owner suffering a larger surrender charge than contractually owed. In this way, ALLIANZ is able to use the sum-of-an-infinite series calculation to charge surrender charges on surrender charges themselves.

38. **"Netting Down:"** Alternatively, ALLIANZ will "net down" the requested withdrawal by formulae after calculating the Withdrawal Charge on the entire requested withdrawal amount. ALLIANZ breaches its contract language by simply deducting the entire

surrender charge from the contract owner's check which forces surrender charges themselves to become subject to their own surrender charges. ALLIANZ is required to issue the contract owner a check equal to the requested withdrawal amount and deduct the Withdrawal Charge from the remaining Contract Value (or Bonus Value) as separate deductions of Accumulation Units (L40535-01-TX pg. 7), and then internally reduce the Purchase Payments and Withdrawal Charge Basis in their proper amounts (L40535-01-TX pg. 9). Instead, ALLIANZ deducts surrender charges from the requested withdrawal amount, contractually disallowed, which ensures that surrender charges themselves are subject to their own surrender charges.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bring this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiffs seek to represent a nationwide class and a Texas statewide class.

**The Nationwide Surrender Charge Class**

40. The proposed Nationwide Surrender Charge Class for Surrender Charges is defined as follows:

> All persons, other than resident citizens of the state of Texas, who, within the applicable statute of limitations, purchased a Vision series or any other of ALLIANZ's variable annuity products from ALLIANZ Life Insurance Company or its affiliates, and incurred a withdrawal charge during their ownership of such product ("Nationwide Surrender Charge Class");

41. The Nationwide Surrender Charge Class is reasonably estimated to be in the thousands or tens of thousands and is thus so numerous that joinder of all its members is impracticable. The precise number of class members and their addresses are unknown to Plaintiffs, but can be ascertained through Defendant's records. Class Members may be notified of the pendency of this action by mailing, publication or other notice.

42. There is a well-defined community of interest in the relevant questions of law and fact affecting the putative Nationwide Surrender Charge Class members concerning the breaches of contract and the uniform application of surrender charges in violation of the policy and contract provisions.

43. Common questions of law and fact predominate over any individual questions affecting Nationwide Surrender Charge Class members, including, but not limited to, the following:

(i) Whether Defendant violated the provisions of the variable annuity contracts in the way in which it assessed surrender charges;

(ii) Whether Defendant is liable for the excess surrender charges that it has imposed;

(iii) Whether Defendant has harmed the members of the class in connection with living benefits;

(iv) Whether Defendant has harmed members of the class in connection with death benefits;

(v) Whether Plaintiffs and members of the Nationwide Surrender Charge Class have sustained damages; and

(vi) Whether Plaintiffs and the Nationwide Surrender Charge Class are entitled to damages.

44. Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to, the specific amount of damages that each Plaintiff or class member has suffered.

45. With respect to each putative class, Plaintiffs' claims are typical of those of the absent class members. If brought and prosecuted individually, the claims of each class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories and seek the same relief.

46. Plaintiffs will fairly and adequately protect the interests of the classes and have no interests adverse to or that directly and irrevocably conflict with the interests of other class members.

47. Plaintiffs are willing and prepared to serve the Court and the putative classes in a representative capacity with all of the obligations and duties material thereto.

48. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiffs and all absent class members.

49. Class certification is appropriate under F.R.C. P. 23(b)(1), in that the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the classes.

50. Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual class members.

51. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a)     individual claims by the class members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

    b)     little individual litigation has been commenced over these controversies alleged in this Complaint, and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c)     the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

    d)    the proposed class action is manageable.

52. Excluded from the Class are Defendant, Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

**The Texas Statewide Surrender Charge Class**

53. The proposed Texas Statewide Surrender Charge Class is defined as follows:

All persons residing in the state of Texas, who, within the applicable statute of limitations, purchased a Vision series or any other of ALLIANZ'S variable annuity products from ALLIANZ Life Insurance Company or its affiliates, and incurred a withdrawal charge during their ownership of such product ("Texas Statewide Surrender Charge Class").

54. The Texas Statewide Surrender Charge Class is reasonably estimated to be in the thousands or tens of thousands and is thus so numerous that joinder of all its members is impracticable. The precise number of class members and their addresses are unknown to Plaintiffs, but can be ascertained through Defendant's records. Class Members may be notified of the pendency of this action by mailing, publication or other notice.

55. There is a well-defined community of interest in the relevant questions of law and fact affecting the putative Texas Statewide Surrender Charge Class members concerning the breaches of contract and the uniform application of surrender charges in violation of the policy and contract provisions.

56. Common questions of law and fact predominate over any individual questions affecting Texas Statewide Surrender Charge Class members, including, but not limited to, the following:

    (i)    Whether Defendant violated the provisions of the variable annuity contracts in the way in which it assessed surrender charges;

    (ii)    Whether Defendant is liable for the excess surrender charges that it has imposed;

    (iii)    Whether Defendant has harmed the members of the class in connection with living benefits;

      (iv)      Whether Defendant has harmed members of the class in connection with death benefits;

      (v)      Whether Plaintiffs and members of the Nationwide Surrender Charge Class have sustained damages; and

      (vi)      Whether Plaintiffs and the Nationwide Surrender Charge Class are entitled to damages.

57. Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to, the specific amount of damages that each Plaintiff or class member has suffered.

58. With respect to each putative class, Plaintiffs' claims are typical of those of the absent class members. If brought and prosecuted individually, the claims of each class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories and seek the same relief.

59. Plaintiffs will fairly and adequately protect the interests of the classes and have no interests adverse to or that directly and irrevocably conflict with the interests of other class members.

60. Plaintiffs are willing and prepared to serve the Court and the putative classes in a representative capacity with all of the obligations and duties material thereto.

61. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiffs and all absent class members.

62. Class certification is appropriate under F.R.C. P. 23(b)(1), in that the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same

essential facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the classes.

63. Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual class members.

64. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a) individual claims by the class members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

b) little individual litigation has been commenced over these controversies alleged in this Complaint, and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

d) the proposed class action is manageable.

65. Excluded from the Class are Defendants, Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

## COUNT ONE
## Breach of Contract

66. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67. ALLIANZ's assessment of surrender charges was done consistently and uniformly in a manner contrary to the terms and conditions of the applicable contracts and policies. In particular, ALLIANZ's assessment of a surrender charge on a surrender charge was a violation of the variable annuity contracts issued by ALLIANZ. ALLIANZ has breached Plaintiffs' contract by failing to perform its obligation to calculate Withdrawal Charges on

withdrawals of Purchase Payments. Instead, ALLIANZ calculates the Withdrawal Charge on reductions of the Withdrawal Charge Basis. They are not one and the same. ALLIANZ breaches their contract by treating a Withdrawal Charge as both a withdrawal of a Purchase Payment and a reduction of the Withdrawal Charge Basis, when they are only permitted the latter, and which is illuminated in their process of "grossing up" and "netting down" - all of which results in the deduction of the surrender charge from the contract owner's check instead of as separate deductions of accumulation units. Such violations of the variable annuity contracts were done intentionally or recklessly.

68. All conditions precedent to the liability or obligations of Jackson National have occurred or have been waived.

69. Plaintiffs and each member of the Nationwide Surrender Charge Class have suffered damage in an amount to be determined. Plaintiffs allege that the total damages to the Nationwide Surrender Charge Class exceed the sum of five million dollars ($5,000,000).

70. Plaintiffs and each member of the Texas Statewide Surrender Charge Class have suffered damage in an amount to be determined. Plaintiffs allege that the total damages to the Texas Statewide Surrender Charge Class exceed the sum of five million dollars ($5,000,000).

### Plaintiffs' Demand for Jury Trial

71. Plaintiffs hereby demand a trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for relief and judgment as follows:

1. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding damages to the class in the amount of improper surrender charges paid by Plaintiffs and the members of the Class;

3. Awarding compensatory damages in favor of Plaintiffs and the other Class members against Allianz Life Insurance Company of North America for all damages sustained as a result of Defendants' wrongdoing, in amounts to be proven at trial, including pre-judgment interest thereon;

4. Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees as may be authorized by law; and

5. Such other and further relief as the Court may deem just and proper.

Respectfully submitted:

/s/ Lewis T. LeClair
Lewis T. LeClair, lead attorney
Texas State Bar No. 12072500
lleclair@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044


Gary D. Corley
Texas State Bar No. 04823800
garycorley@gcorleylaw.com
Jared T. Elk
Texas State Bar No. 24114494
jared@gcorleylaw.com
**CORLEY LAW FIRM**
108 North Travis Street
Sherman, Texas 75090
Telephone: (903) 892-1048
Telecopier: (214) 260-4925

**ATTORNEYS FOR PLAINTIFFS SANDY NELSON AND JACK MEDFORD AS CO-TRUSTEES OF THE PATRICIA CLARKE 2010 LIVING TRUST**